IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SOHRAB SHARMA,                        )
                                      )
        Petitioner,                   )
                                      )
v.                                    )        CASE NO. 2:24-CV-158-RAH-KFP
                                      )
COLETTE PETERS,                       )                [WO]
DIRECTOR, UNITED STATES               )
BUREAU OF PRISONS, *et al*.,          )
                                      )
        Respondents.                  )

## MEMORANDUM OPINION

## I.      INTRODUCTION

Petitioner Sohrab Sharma, by and through counsel, brings this action under 28 U.S.C. § 2241. Sharma, a federal prisoner at Maxwell Federal Prison Camp in Montgomery, Alabama, alleges that: (1) under the First Step Act ("FSA")[1] he was eligible to receive 15 days of FSA credit a month instead of 10; (2) he is entitled to FSA program days for the days he was awaiting designation, being transferred between facilities, or in a Special Housing Unit ("SHU") outside of his designated facility; and (3) good time credits should be restored because he did not receive a disciplinary hearing report following a disciplinary hearing. Doc. 1.[2] Sharma requests 62 days of FSA time credits that he was eligible to receive, 122 FSA program days from commencement of his sentence or when he was not in disciplinary segregation status, and restoration of 41 days of Good Time

---

[1] *See* First Step Act of 2018, PL 115–391, December 21, 2018, 132 Stat. 5194.
[2] References to documents filed in this case are designated as "Doc." Pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing system and may not correspond to pagination on the copies as submitted for filing.

credits for not receiving a disciplinary report. *id.* at 3–5.

## II.   FACTUAL BACKGROUND

The United States District Court for the Southern District of New York convicted Sharma of violating 18 U.S.C. § 371, Conspiracy to Commit Securities Fraud, Wire Fraud, and Mail Fraud. Doc. 18-1 at 1, ¶2; *see also* Doc. 18-1 at 7. On March 4, 2021, the court sentenced him to eight years imprisonment followed by three years of supervised release. Doc. 18-1 at 1, ¶2. From August 18-24, 2021, Sharma was incarcerated at FDC Miami in hold-over status. *id.* at 3, ¶15. Sharma arrived at FCI Coleman—his designated facility—on August 25, 2021. *id.* Sharma's full-term release date—as reflected on the public information inmate data sheet—is June 10, 2029, and his conditional release date after application of FSA and § 3621E credits is June 4, 2026. *id.* at 8.

## III.   PROCEDURAL HISTORY

Respondents filed a response and supporting evidentiary materials arguing Sharma's petition is due to be dismissed because the BOP ("Bureau of Prisons") properly calculated his federal time credits. Doc. 18. The Court granted Sharma an opportunity to respond (Doc. 19), and he did so (Doc. 20). The petition is ripe for review.

## IV.   JURISDICTION AND VENUE

The law is settled that a 28 U.S.C. § 2241 petition for writ of habeas corpus is the proper vehicle for a prisoner to challenge the manner, location, or execution of his sentence. *Lopez v. Davis*, 531 U.S. 230, 236 (2001); *McCarthen v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1092–93 (11th Cir. 2017); *Williams v. Pearson*, 197 F. App'x 872, 877 (11th Cir. 2006). Sharma's habeas application challenges the BOP's conduct about the

calculation of good time credits and sentencing credits under the FSA and those claims are considered proper under the procedural mechanism of 28 U.S.C. § 2241. *McCarthen*, 851 F.3d 1092–93. Venue is likewise proper because Sharma is incarcerated in this district. *See e.g.*, *Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991) (holding that a 28 U.S.C. § 2241 petition for habeas corpus relief generally must be brought in the district court where the inmate is incarcerated.); *Brown v. Warden of FCI Williamsburg*, No. 8:19cv00546HMHJDA, 2019 WL 1780747, at *2 (D.S.C. Mar. 25, 2019), *report and recommendation adopted*, No. CV 8:19-546-HMH-JDA, 2019 WL 1773382 (D.S.C. Apr. 23, 2019) (finding that a § 2241 petition must be brought against the warden of the facility where the prisoner is being held and in the district of confinement rather than in the sentencing court) (*citing* 28 U.S.C. § 2242 and *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989)).

## V.    DISCUSSION[3]

### A.    FSA Credits

Sharma claims that the BOP's failure to compute his PATTERN ("Prisoner Assessment Tool Targeting Estimated Risk and Needs") score correctly, combined with the BOP's refusal to reassess his PATTERN score until March 2023, improperly prevented him from receiving an additional 62 days of FSA Time Credits ("FTCs").[4] Doc. 1 at 3, 7–8.

---

[3] Sharma filed a Notice on June 5, 2024, acknowledging that one of his claims has become moot since the Petition was filed. Doc. 21. That issue concerned expungement of an incident report and restoration of 41 days of Good Time credit towards his sentence after the BOP failed to provide him with a written DHO (Disciplinary Hearing Officer) report containing the BOP's findings following a hearing. Doc. 1 at 2, 4–5, 13–14. Because Sharma concedes that this issue is moot, the Court does not address it.

[4] Under 18 U.S.C. § 3632(d)(4)(C) the BOP can apply FSA time credits to either lengthen an eligible inmate's pre-release custody, such as home confinement or half-way house placement, or allow an earlier transfer to supervised release. However, under 18 U.S.C. § 3624(g)(3), "the Director of the [BOP] may transfer [a]

According to Sharma, because he received two consecutive low PATTERN assessments—one on February 25, 2022, and another on March 10, 2022—the BOP had no discretion under 18 U.S.C. § 3632(d)(4)(A)(ii) to deny him the additional 5 days of FTCs beginning on March 11, 2022. Doc. 1 at 3, 7–8; *see also* Doc. 20 at 1–3.

The FSA created guidelines for a "risk and needs assessment system" regarding recidivism and recidivism reduction. *See* 18 U.S.C. § 3632(a). Under this system, a prisoner is allowed to earn credits towards pre-release custody or supervised release if he successfully participates in evidence-based recidivism reduction ("EBBR") programming and productive activities ("PAs"). *See* 18 U.S.C. § 3632(d)(4). Under the statute, eligible prisoners can earn 10 days of time credits for every 30 days of successful participation in EBRR programming or PAs or, if they meet other specific qualifications, they can earn an additional 5 days (for a total of 15 days) of time credits for every 30 days of successful participation in these programs. *See* 18 U.S.C. § 3632(d)(4)(A)(i-ii).

Respondents attached the Declaration of Tiana Barrow, a case manager employed by the BOP. Doc. 18-1 at 1–4. In the declaration, Barrow states her duties give her access to and knowledge of the computer system known as electronic inmate central file (e-ICF). *Id.* at 1, ¶1. This file contains electronic records for tracking inmates in the federal system, including their FSA records. *Id.* Barrow testifies that Sharma has received all the FSA credits to which he is entitled, and his federal sentence has been computed in accordance

---

prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3). As of May 8, 2024, Sharma has accrued 872 program days resulting in 345 days of FSA credits towards his release date. Doc. 18-1 at 1–2, ¶4; Doc. 18-1 at 8. Sharma is therefore close to having the maximum number of days that may be granted to reduce incarceration time towards the beginning of pre-release custody or supervised release. Doc. 18-1 at 2, ¶4.

with federal statute and BOP policy as follows:[5]

4.     … According to his most recent FSA Time Credit Assessment dated May 8, 2024, Petitioner has accrued a total of 872 program days. As a result, he has received 345 days towards his release date. Petitioner is approaching the maximum number of days an inmate may be granted towards his release date, which is 365. ([Doc. 18-1 at 10–12]: FSA Time Credit Assessment 05/08/24)

5.     Petitioner alleges that he is entitled to an additional 62 days of FSA credit towards his sentence for time served from 03/11/2022 - 03/16/2023. During this time period, Petitioner was earning FSA credits at a factor of 10 days, but he claims that he should have been receiving credits at a factor of 15 days.

6.     According to BOP Policy, an inmate may only earn 15 days of credit after the inmate has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments.

       *"(c) Amount of FSA Time Credits that may be earned.*

       *(1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmates risk and needs assessment, that inmate will earn ten days of FSA Time Credits.*

       *(2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:*

       *(i)  Is determined by the Bureau to be at a minimum or low risk/of recidivating; and
       (ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments   conducted by the Bureau."* [6]

([Doc. 18-1]: P.S. 5410.01 First Step Act of 2018-Time Credits: Procedures for

---

[5] Paragraph numbering corresponds to the numbered paragraphs in Ms. Barrow's Declaration.
[6] Italics displayed in original.

Implementation of 18 USC 3632(d)(4) ("P.S. 5410.01"), page [27].)

7.  To determine an inmate's risk of recidivism, BOP assesses each inmate using the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). ([Doc. 18-1]: P.S. 5410.01 at [25].)

8.  As indicated by Petitioner's FSA Time Credit Assessment, the BOP is currently using assessment intervals to aid in the calculation of FSA Time Credits. (*See* [Doc. 18-1 at 10-12].)

9.  An inmate's first assessment interval is 28 days because BOP policy requires that an inmate's recidivism risk level be assessed during Initial Classification which occurs within 28 days of the inmate's arrival at their designated institution. See 28 C.F.R. § 524.1 l(a)(l); [Doc. 18-1]: P.S. 5410.01 § 5 at [25]; [Doc. 18-1]: BOP Program Statement 5322.13, Inmate Classification and Program Review ("P.S. 5322.13") § 8(a), at [42].

10. An inmate's subsequent assessment intervals are 180 days, because BOP policy requires that an inmate's recidivism risk level be reassessed during regularly scheduled Program Reviews which occur at least once 180 days, unless the inmate is within 12 months of the projected release date, in which case the interval period is 90 days. *See* 28 C.F.R. § 524.1 l(a)(2); [Doc. 18-1]: P.S. 5410.01, § 5, at [26]; [Doc. 18-1]: P.S. 5322.13 § 8(b), at [43].

11. Petitioner was assessed on September 25, 2021 as a medium recidivism risk. This assessment applied to Petitioner's first assessment interval, from August 25 to September 22, 2021 (28 days), and his second assessment interval, from September 22, 2021 to March 21, 2022 (180 days), and he earned at a factor of 10 FSA credits for those two intervals. Petitioner received his first low PATTERN score on February 25, 2022, and he continued to earn at a factor of 10 FSA credits for the third assessment interval from March 21 to September 17, 2022. Petitioner received his second [] low PATTERN score on August 24, 2022, which meant he again earned at a factor of 10 FSA credits for that 180-day assessment period from September 17, 2022 to March 16, 2023. When Petitioner received a low PATTERN score on February 15, 2023, he became eligible to start earning at a factor of 15 FSA credits for the applicable 180-day interval from March 16 to September 12, 2023. [Doc. 18-1 at 9–12]. Based on my review, Petitioner has received all of the FSA credit he is entitled to for this time period.

12. PATTERN 01.03.00 was implemented on May 7, 2022. BOP did not

apply this tool retroactively but applied it to inmates at their next regularly scheduled reassessments.

Doc. 18-1 at 1–3, ¶¶ 4–12.

Sharma claims that Barrow's Declaration fails to explain why a second low PATTERN Score at his earlier assessment on March 10, 2022, or the third low PATTERN assessment on August 17, 2022, or the fourth low PATTERN assessment on August 24, 2022, did not trigger accrual of the extra five days of FSA credit. Doc. 20 at 2. Sharma maintains that nothing in the Code of Federal Regulations or BOP policy precludes a PATTERN score being generated earlier than 180 days from the prior interval. *Id.* at 3. As a result, Sharma contends his second low PATTERN score thirteen days after his first low PATTERN score should be counted as his second low PATTERN score. *Id.*

Consistent with the statutory requirements in § 3632(d)(4)(A)(ii), Sharma received 10 days of credit for every 30 days of program participation during his first two assessment periods—from August 25, 2021, to September 22, 2021, and September 22, 2021, to March 21, 2022—when his PATTERN score was assessed at medium. Doc. 18-1 at 11. When his recidivism risk did not increase over two consecutive assessment periods—March 21, 2022, to September 17, 2022, and September 17, 2022, to March 16, 2023—Sharma began earning 15 days of credit for every 30 days of program participation.[7] *Id.* If Sharma argues that under

---

[7] The BOP's FSA Time Credit Assessment for Sharma (Doc. 18-1 at 11–12) reflects:

```
--- FSA Assessment -------------------------------------------------------
----------------
# Start Stop Status Risk Assignment Risk Asn Start Factor
001 08-25-2021 09-22-2021 ACTUAL FSA R-MED 09-25-2021 1110 10
002 09-22-2021 03-21-2022 ACTUAL FSA R-MED 09-25-2021 1110 10
003 03-21-2022 09-17-2022 ACTUAL FSA R-LW 02-25-2022 1029 10
004 09-17-2022 03-16-2023 ACTUAL FSA R-LW 08-24-2022 1130 10
005 03-16-2023 09-12-2023 ACTUAL FSA R-LW 02-15-2023 1512 15
006 09-12-2023 03-10-2024 ACTUAL FSA R-LW 02-15-2023 1512 15
```

§ 3632(d)(4)(A)(ii) low-risk inmates who do not increase their recidivism risk should be credited with 15 days of time credits not only going forward but also over the period which contains the first two assessments, the language of the statute does not support this interpretation. Here, the "triggering event" for earning 15 days rather than 10 days of credits was Sharma's ability to "maintain[] a minimum or low risk of recidivating '*over two consecutive assessments.*'" *See Laksonen v. Eischen*, Case No. 22-cv-2868 (KMM/JFD), 2023 WL 3072434, at *3 (D. Minn. Apr. 25, 2023) (emphasis in original); *see also Williams v. Sage*, No. 3:24-CV-0129, 2024 WL 1313223, at *2 (M.D. Pa. Mar. 27, 2024) (internal quotation marks and citation omitted) (finding that 5-day increase pursuant to 18 U.S.C. § 3632(d)(4)(A)(ii) did not occur until inmate had "2 consecutive assessments during which he did not increase his recidivism risk.").[8] Thus, under the plain language of the statute, the earliest Sharma could begin earning time credits at a factor of 15 days for every 30 days of successful programming was on March 16, 2023, following his second consecutive "low" PATTERN risk assessment score. *See* Doc. 18-1 at 11. The BOP has continued to calculate Sharma's FSA time credits at the same rate. *Id.* The Court therefore finds that Sharma is not entitled to relief on his claim that the BOP erred in its determination of the amount of FSA time credits awarded him.

---

007 03-10-2024 09-06-2024 ACTUAL FSA R-LW 10-04-2023 2347 15

[8] This Opinion cites to non-binding authority. While recognizing these cases are not precedential, they are found persuasive.

B.      **Equal Protection Claim**

Sharma argues that the BOP's initial risk assessment of him was based on an older version of the PATTERN scoring assessment tool (PATTERN 01.02.00) which amounts to unequal treatment when "juxtaposed" against detainees who had their initial risk assessment determined under an updated version. Doc. 1 at 8–9. This conduct, Sharma claims, is unconstitutional because it is not rationally related to a legitimate government purpose. *Id.* at 9.

In her Declaration, Barrow states Sharma was initially assessed on September 25, 2021. Doc. 18-1 at 3 ¶11. The BOP implemented PATTERN 01.03.00 on May 7, 2022. *Id.* ¶12. The BOP did not engage in retroactive application of this new version but proceeded to apply it to inmates at their next regularly scheduled reassessments. *Id.*

To raise an equal protection claim, Sharma must show that "he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest." *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) (quotation omitted). The Equal Protection Clause also can give rise to a claim for a "class of one," where the plaintiff is not a member of a protected class or group. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1201 (11th Cir. 2007). Sharma may establish a "class of one" equal protection claim by showing that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lieb v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009).

The BOP classified Sharma as a medium risk using the PATTERN risk assessment in

place at the time of his initial assessment. Doc. 1 at 9. If evaluated using the latest version of the PATTERN risk assessment, Sharma maintains his initial risk assessment score and his second assessment score on February 25, 2022, would have resulted in his classification as low risk and he would have begun earning FSA time credits at a factor of 15 from February 25, 2022. *Id.* Sharma argues the disparity between his risk score based on an older version of the PATTERN risk assessment and the risk score of detainees who receive their initial assessment under the latest PATTERN version lacks a rational connection to any legitimate government purpose. *Id.*

Regardless of the equal protection theory under which Sharma seeks to proceed, he fails to allege facts that would support the elements under either equal protection theory. That is because each theory requires him to show that he was treated differently from "similarly situated" persons. Sharma does not argue he is a member of a protected class and concedes inmates are not a suspect class. Doc. 1 at 8; *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (observing that "prisoners are not a suspect class."). Thus, Sharma must establish the existence of similarly situated inmate comparators. This he has not done.

Missing from Sharma's argument is any allegation that he was treated differently from other similarly situated inmates concerning the BOP's application of the challenged PATTERN risk assessment. The fact that Sharma received a risk assessment under an older version of the PATTERN risk assessment tool resulted from the timing of his assessment. Detainees assessed on or after May 7, 2022, when PATTERN 01.03.00 was implemented, are not similarly situated to Sharma because their initial classification assessment occurred

on or after the updated version of the PATTERN tool became available. As explained, the BOP did not apply PATTERN 01.03.00 retroactively (Doc. 18-1 at 3, ¶12) and no evidence has been presented of a specific statute or constitutional mandate requiring that the most recent PATTERN version be applied retroactively to inmates assessed under the older version. The mere fact that Sharma may have received an earlier low risk classification under the latest PATTERN version does not, without more, reflect that he was subject to unequal treatment.

Here, Sharma fails to identify any similarly situated comparator in all relevant respects who was treated more favorably than he was regarding the version of the PATTERN tool the BOP used to initially classify his recidivism risk. Accordingly, Sharma fails to meet the first prong of a "class of one" equal protection claim, and it is therefore unnecessary to address the rational basis prong.

### C.   Disallowed Time

Sharma challenges the BOP's determination that he was ineligible to accrue FSA time credits during certain periods of his incarceration. Doc. 1 at 9–13. He claims entitlement to 122 days of FSA program days from commencement of his sentence excluding time in disciplinary segregation status. *Id.* at 9. Specifically, Sharma requests seven days of FSA credits from August 18, 2021, to August 25, 2021, when he was in holdover status for a post-sentencing bond violation. Doc. 1 at 10; Doc. 20 at 6. He maintains that the plain language of 18 U.S.C. § 3585(a) and § 3632(d)(4)(B) make clear that he should receive FTCs from the date his sentence commenced and not, as 28 C.F.R. § 523.42 provides, from the time he is received at his designated facility. Doc. 1 at 10; Doc. 20 at 4–6. Sharma also seeks FSA

credits of: (1) 12 days when he was in transfer status from June 8, 2023 to June 20, 2023;[9] (2) 50 days from June 28, 2023 to August 17, 2023, when he was designated to a Special Housing Unit ("SHU") on administrative detention resulting in his removal from FPC Montgomery to the Montgomery County Jail;[10] and (4) 53 days in SHU status at USP Atlanta from August 17, 2023, to October 10, 2023. Doc. 1 at 10–13; Doc. 20 at 6–8. Respondents argue that the BOP has correctly calculated Sharma's FSA credits. Doc. 18 at 5.

As for Sharma's request for FSA credits during the time the BOP considered him in transfer or administrative detention status, Respondents maintain he was not eligible under § 523.41(c)(4)(ii) to earn these credits. Docs. 18 at 7; 18-1 at 3–4, ¶¶15–17; 18-1 at 20-21. From June 8 to 20, 2023, and from August 17, 2023, to October 10, 2023, the BOP considered Sharma at an "in-transit" facility and not at his designated facility thereby prohibiting him from earning FTCs. Docs. 18 at 7–8; 18-1 at 3–4, ¶¶16–17. From June 28, 2023, to August 17, 2023, Sharma was in SHU in administrative detention which Respondents acknowledge does not normally disqualify an eligible inmate from earning FTCs, but "the problem for Sharma," was his transfer to the Montgomery County Jail because his designated facility (FPC Montgomery) lacked a SHU. Doc. 18 at 7. In response, Sharma maintains he was housed in SHU on administrative detention status, and as such, he was available for programming, willing and able to participate in programming, and counselors made frequent status checks on BOP inmates housed at the Montgomery County Jail. Doc. 20 at 7–8. Sharma

---

[9] During this time Sharma was in transit from FCC Coleman Low Satellite Camp, FDC Tallahassee, USP Atlanta, and FPC Montgomery. Doc. 20 at 7, n.3.

[10] Barrow's Declaration explains that FPC Montgomery, like other federal prison camps, does not have a SHU on site, therefore, inmates at the facility who need to be held in a SHU are transferred to other facilities, such as the Montgomery County Jail, the Clay County Jail in Ashland, Alabama, or to BOP facilities with a SHU like USP Atlanta. Doc. 18-1 at 4, ¶18.

also contends that facilities like the Montgomery County Jail which house federal inmates assigned to SHU status are "de facto" designated institutions, and thus "[w]hile [inmates] are no longer physically at their designated facility, they still earn FSA programming days if they are otherwise not in 'opt-out' status for declining programming or surveys." *Id*. at 8. And because the incident report that resulted in Sharma's placement in SHU status at the Montgomery County Jail was expunged, he contends that fact "should hold weight on why these days should be restored." *Id.*

Respondents maintain that under BOP regulations Sharma was considered generally eligible to earn time credits beginning on August 25, 2021, when he arrived at his designated facility. Doc. 18-1 at 3, ¶15. Sharma did not receive an initial PATTERN risk assessment score until September 25, 2021, at which time he was assessed as a medium recidivism risk for EBRR programming and PAs. Doc. 18-1 at 3, ¶11. Sharma's FSA Time Credit Assessment dated May 5, 2024, shows he was in FTC earning status ("accrued program days") prior to his PATTERN assessment on September 25, 2021, and was considered in this earning status upon his arrival at his designated facility on August 25, 2021. *See* Doc. 18-1 at 10. Sharma claims he is entitled to an award of additional FSA programming days based on the FSA statutory framework of when he became eligible for FTCs and when he became eligible to earn them.

As explained above, the FSA created guidelines for a "risk and needs assessment system" regarding recidivism and recidivism reduction. 18 U.S.C. § 3632(a). Under 18 U.S.C. § 3632(d)(4)(A) inmates "shall earn time credits" for successfully completing programming unless they are ineligible to earn these credits under 18 U.S.C. § 3632(d)(4)(D). The FSA

limits the availability of time credits "for an evidence-based recidivism reduction program that the prisoner successfully completed – (i) prior to the date of enactment of this subchapter; or (ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(i–ii). Under 18 U.S.C. § 3585(a) "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Certain convictions make an inmate ineligible. *See* 18 U.S.C. § 3632(d)(4)(D)(i–lxviii). Except for inmates considered ineligible under 18 U.S.C. § 3632(d)(4)(D)(i–lxviii), eligible inmates who successfully complete EBRR programming or PAs, shall earn time credits based on their PATTERN risk assessment score and its requirements for every 30 days of successful participation in FSA programming. 18 U.S.C. § 3632(d)(4)(A).

On January 19, 2022, the BOP promulgated a final rule for FSA time credits, *see* 87 FR 2705-01, which was later codified at 28 C.F.R. § 523.41. Under 28 C.F.R. § 523.41(d)(1), "[a]ny inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits." Doc. 18-1 at 23 (emphasis in original). The next regulation, 28 C.F.R § § 523.42(a), addresses "[w]hen an eligible inmate begins earning FSA Time Credits." It adopts the language of the FSA that "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences" but goes on to parenthetically identify this as "the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served." Doc. 18-1 at 26–27.

Respondents contend that under 28 C.F.R. § 523.42 an inmate is eligible to start earning FSA time credits when the inmate arrives at the designated BOP facility where the sentence will be served. *See* Doc. 18-1 at 3, ¶15; *see also* Doc. 18-1 at 26–27. Sharma arrived at his designated facility (FCI Coleman) on August 25, 2021. Doc. 18-1 at 3, ¶15. Sharma counters that Respondents' reliance on § 523.42 is misplaced and courts that have considered the issue have concluded that an eligible inmate is entitled to FSA credits from the date the sentence commenced under 18 U.S.C. § 3585(a) which "specifies [] 'the date the defendant is received in custody awaiting transport to' his initial BOP-designated facility as the date his or her 'sentence to a term of imprisonment commences' for purposes of determining whether he can begin to earn FSA time credits."[11] Doc. 1 at 10 (quoting *Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213, 218 (D.N.H. 2023);[12] *see also Patel v. Barron*, No. C23-937-KKE, 2023 WL 6311281, at *5 (W.D. Wash. Sept. 28, 2023) (finding that "the FSA unambiguously requires the BOP" to calculate an inmate's FTC eligibility from the date the inmate is sentenced and committed to custody of the BOP); *Mohammed v. Stover*, No. 3:23-CV-757 (SVN), 2024 WL 1769307, at *2 n.2 (D. Conn. Apr. 23, 2024) (noting its agreement with the "reasoning of *HuiHui v. Derr,* No. CV 22-00541 JAO-RT, 2023 WL 4086073 (D. Haw. June 20, 2023)*, and *Yufenyuy* … which found that BOP's regulations precluding inmates from being eligible to earn FSA credits beginning on the date their sentences

---

[11] Although Respondents assert that Sharma waived this argument by not raising it (*see* Doc. 18 at 6, n.1), review of his petition and response reflects he did so. *See* Doc. 1 at 10; Doc. 20 at 4–6.

[12] In *Yufenyuy*, 659 F. Supp. 3d at 218, the court, relying on *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984*), overruled by Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024),  determined that 28 C.F.R. § 523.42(a) contradicts "the plain language of the FSA, and of § 3585(a), [which] clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits" and that "[t]here is no ambiguity in any of the terms of § 3632(d)(4)(A) or (B), regarding when a prisoner's completion of programs will not count for purposes of earning time credits under the FSA."

commenced contradicts clear congressional intent and are therefore due no deference."); *Jobin v. Warden, FCI-Mendota*, No. 1:23-CV-01700-WBS-SKO (HC), 2024 WL 1367902, at *4 (E.D. Cal. Apr. 1, 2024), *report and recommendation adopted*, No. 1:23-CV-01700-WBS-SKO (HC), 2024 WL 2786898 (E.D. Cal. May 30, 2024) (finding that "under 18 U.S.C. § 3632(d)(4)(B)(ii), [the petitioner's] eligibility for FSA time credits commenced the moment he was sentenced under 18 U.S.C. § 3585(a), because he was in BOP custody."); *Umejesi v. Warden, FCI Berlin*, No. 22-CV-251-SE, 2023 WL 4101455 (D.N.H. Mar. 30, 2023) (same). While the aforementioned cases resolved the issue of when an inmate's eligibility for FSA credits commenced prior to the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the undersigned arrives at the same conclusion that the statute unambiguously addresses the question of when an inmate is eligible for FSA credits.[13] Thus, the BOP's regulation that adds a layer of eligibility not found in the statute conflicts with its express language.

This determination provides the starting point for when Sharma became eligible to earn FTCs, but remaining is Respondents' argument that Sharma was not "successfully participating" in EBRR programming or PAs when he was not at his designated institution, and so under 28 C.F.R. § 523.41(c)(4)(ii), he could not earn FSA time credits. *See* Doc. 18 at 7–8. The language of the FSA implies that inmates begin earning FTCs when their sentence

---

[13] Prior to *Loper Bright Enterprises*, 144 S. Ct. 2244 (2024), federal courts deferred to an agency's reasonable interpretation of an ambiguity in a law that the agency enforces. *See Chevron*, 467 U.S. at 842–43. This meant a court could not "impose its own construction" on that statute. *Id*. at 843. In contrast, if Congressional intent about the meaning of the statute was clear, courts had to follow the intent of Congress. *Id*. at 842.  In *Loper Bright Enterprises*, the Supreme Court explained that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority… [a]nd when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not … defer to an agency interpretation of the law simply because a statute is ambiguous." 144 S. Ct. at 2273.

commences but also ties application of those credits to successful participation and completion of BOP programming. Eligibility from commencement of an inmate's sentence is thus a key component to earning time credits, but the award and application of those credits is tied to the inmate's successful participation and completion of eligible programming to fulfill the opportunity to be awarded FTCs during those periods an inmate is considered in eligible earning status.

The definitions of "successful participation" in, or "successful completion" of, EBRR programs or PAs ("programming") are not found in the FSA itself. Under the statute, "[an eligible] prisoner ... who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" at a rate provided for by statute based on the inmate's "successful participation" in EBRRs or PAs. 18 U.S.C. § 3632(d)(4)(A)(i-ii). The FSA itself, however, provides no standard metrics or objective criteria for what constitutes "successfully completes" or "successful participation." *See* 18 U.S.C. § 3632(d)(4).

As noted, prior to the Supreme Court's decision in *Loper Bright Enterprises,* 144 S. Ct. 2244—when Congress gave authority to an agency to make rules with the force of law, and the agency acted under that delegated authority in interpreting the statute—a court reviewed the agency's interpretation under the standards set forth in *Chevron, U.S.A., Inc.*, 467 U.S. at 865. Courts are now required to first determine whether Congress explicitly delegated interpretive authority to the BOP regarding ambiguous terms like "successfully completes" or "successful participation" before deferring to its interpretation of such a phrase. *See Loper Bright Enterprises*, 144 S. Ct. at 2261 (internal quotations and citation

omitted) (explaining that it is the "responsibility of the court to decide whether the law means what the agency says.").

In a case such as this one involving undefined or ambiguous terms in a BOP regulation like "successfully completes" or "successful participation," as criterion for an inmate's ability to earn time credits, under *Loper Bright Enterprises*, the undersigned must determine whether "successfully completes" and "successful participation" in 18 U.S.C. § 3632(d)(4)(A) means what the regulation says in 28 C.F.R. § 523.41(c)(1–4). That is, did Congress intended for the BOP to have the power to interpret and define these terms, and if not, the Court cannot defer to the agency's interpretation but must resolve the ambiguity independently. *See Loper Bright Enterprises*, 144 S. Ct. at 2263 (explaining that "[w]hen the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court" is "to independently interpret the statute and effectuate the will of Congress subject to constitutional limits.)" The undersigned therefore reviews 28 C.F.R. § 523.41(c) in relation to the provisions found in § 3632(d)(4)(A).

First, under 28 C.F.R. § 523.41(c)(1) and (2), the BOP states that to earn FSA Time Credits an "eligible inmate must be 'successfully participating'" in FSA programing and "'[s]uccessful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." Doc. 18-1 at 20–21. This appears to be a facially valid interpretation of "successful participation" as used in 18 U.S.C. § 3632(d)(4)(A) since a primary purpose of the FSA in terms of recidivism programming is to

reduce recidivism rates by providing inmate access to programming that focuses on reducing an offender's likelihood of reoffending. The provisions of 28 C.F.R. § 523.41(c)(3), also appear valid and provide that "[t]emporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility. Finally, under 28 C.F.R. § 523.41(c)(4)(i-v), the BOP specifies circumstances when an "eligible inmate" is *generally* not considered "successfully participating" in programming. These limitations also appear to be a facially valid interpretation for application of the FSA as it is conceivable that many factors might prevent or severely limit an inmate's ability to engage with or significantly participate in programming as delineated in 28 C.F.R. § 523.41(c)(4)(i-v).

As pertinent here, even if the limiting circumstances proscribed in 28 C.F.R. § 523.41(c)(4)(i-v) are considered valid on their face, the issue remains whether they are based on a permissible construction or interpretation of the relevant statutory provision. The FSA specifies the requirements of an inmate's general eligibility to earn FTCs, but as explained the statute does not define the terms "successfully complete" or "successful participation" or specify any criteria for what constitutes these terms which leaves them open to interpretation. *See generally* 18 U.S.C. § 3632. *See In re BFW Liquidation, LLC*, 899 F.3d 1178, 1188 (11th Cir. 2018) (citation omitted) (explaining that "[s]tatutory language is ambiguous if it is susceptible to more than one reasonable interpretation.").

Although Respondents rely on 28 C.F.R. § 523.41(c)(4)(ii–iii) as the basis to disqualify Sharma from being considered in earning status for four distinct periods, under

18 U.S.C. § 3632(d)(4)(B), the FSA Time Credits are available for successfully completed programing unless that programming is completed: (1) "prior to the date of enactment of this subchapter; or ... during official detention prior to the date that the prisoner's sentence commences under section 3585(a);" or (2) the prisoner is otherwise ineligible under section 3632(d)(4)(D). Sharma does not meet any of these disqualifications.

Consequently, the undersigned is not convinced that Sharma's purported inability to earn FTCs for which he was eligible was because he was housed outside of his designated facility. The language of 18 U.S.C. § 3632(d)(4)(B) itself imposes no such limitation or exclusions on an inmate's eligibility to earn FTCs nor does it impose any restrictions on the BOP from evaluating or determining an inmate's participation in various programming across different BOP facilities. The BOP must apply time credits to eligible prisoners who have earned them and cannot categorically make prisoners ineligible for such credits in a manner that contravenes the statutory scheme set forth in 18 U.S.C. § 3632. Instead, the statute only requires the BOP to determine that an eligible inmate has successfully participated in and completed programming based on their PATTERN risk assessment score and complied with the program's requirements.[14]

Respondents do not explain why the facilities where Sharma was housed during the time the BOP considered him to be in "disallowed" status could not accommodate or assess his participation in FSA programming nor is there any evidence Sharma was either non-

---

[15]As to an inmate's ability to earn or accumulate FTCs, notably in *Borker v. Bowers*, No. CV 24-10045-LTS, 2024 WL 2186742, at *2 (D. Mass. May 15, 2024) (emphases in original) (brackets in original), the court found that the BOP's evidence revealed that once an inmate's needs were assessed or identified, the inmate will "earn FSA time credits *by default* so long as he is 'able and *willing* (i.e. not "opting out," "choosing not to participate in [programming]," or otherwise not "successfully participating") to complete' programming."

compliant with or opted out of programming. Inmates like Sharma should not be prevented from earning FTCs based on a BOP designation system that prevents inmates from earning these time credits even though under the language of the statute there has been a determination that they are eligible to receive them. Such a result is not within the statutory framework of the FSA and the BOP presents no legal authority for prioritizing its adherence to policy exclusions of disallowing eligible inmates from earning FTCs over statutory compliance.

On this record, the Court finds that the additional exclusions in 28 C.F.R. § 523.41(c)(4)(i-iv), which are not found in the language of the FSA, cannot categorically be applied to render Sharma ineligible from earning or applying FTCs to which he may be entitled. *See* 18 U.S.C. § 3632(d)(4). Therefore, the BOP should calculate the FSA time credits Sharma has earned and continues to accrue and calculate and apply them in accordance with the applicable statutory requirements. Specifically, the BOP should consider whether Sharma met the specific requirements for EBRR programming and PAs under 18 U.S.C.§ 3632(d)(4) during the challenged disallowed periods and then recalculate Sharma's time credits, if appropriate.

An appropriate order and judgment will be entered.

DONE, on this the 4th day of November 2024.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE